UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:95-cr-00025-JAW |
| | ) | |
| KENNETH LEON MEADER | ) | |

**ORDER ON MOTIONS FOR COMPASSIONATE RELEASE
AND APPOINTMENT OF COUNSEL**

An inmate serving a thirty-five-year sentence, to be followed by fifty-six consecutive months imposed for conspiracy to escape, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court dismisses the motion without prejudice because, although the inmate's health conditions continue to present extraordinary and compelling reasons for compassionate release, the inmate has not addressed the outcome-determinative factors in his prior motions for compassionate release, namely the nature and circumstances of his offenses, the protection of the public, his history and characteristics, and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence, all factors under 18 U.S.C. § 3553(a). Having found extraordinary and compelling reasons for the inmate's compassionate release based on his medical conditions, the Court nevertheless dismisses his motion for release without prejudice because its weighing of the § 3553(a) factors counsels against release. The Court also dismisses without prejudice the inmate's request for appointment of counsel as unnecessary at this time.

## I.  BACKGROUND

### A.  Factual Background

On March 27, 1996, a jury convicted Mr. Meader of one count of being a felon in possession of a firearm, one count of distributing narcotics, and one count of using a firearm during a drug trafficking crime. *United States v. Meader*, No. 1:95-cr-00025-JAW, *Jury Verdict* (ECF No. 56). On October 17, 1996, Judge D. Brock Hornby sentenced Mr. Meader to 120 months imprisonment on count one and 360 months on count two, to be served concurrently, and sixty months on count three, to be served consecutively. *J.* (ECF No. 79). Judge Hornby imposed six years of supervised release on count two, and three years each on counts one and three, to be served concurrently. *Id.*

On January 13, 2000, in case No. 1:98-cr-00042-JAW, Judge Morton A. Brody sentenced Mr. Meader to an additional fifty-six months for conspiring to escape from federal custody, to be served consecutively to the sentence imposed by Judge Hornby in Mr. Meader's criminal case No. 1:95-cr-00025. *United States v. Meader*, No. 1:98-cr-00042-JAW, *Am. J.* (ECF No. 37). Mr. Meader's projected release date is February 3, 2029; he is now 72 years old and is incarcerated in FCI Butner Medium II. Fed. Bureau of Prisons, *Find An Inmate*, https://www.bop.gov/inmateloc/ (last visited Mar. 14, 2022).

### B.  Procedural History

Mr. Meader suffers from a host of medical conditions and has filed multiple motions for compassionate release. On November 17, 2020, Judge Hornby denied his

first request for compassionate release pursuant to the First Step Act. *Decision and Order on Mot. for Compassionate Release* (ECF No. 121) (*November 2020 Order*); *see also Am. Mot. for Compassionate Release* (ECF No. 117). Mr. Meader appealed Judge Hornby's decision, *Notice of Appeal* (ECF No. 122), then moved to voluntarily dismiss his appeal, which the First Circuit allowed. *J.* (ECF No. 129); *United States v. Kenneth Leon Meader*, Nos. 20-2137, 20-2147, 2021 U.S. App. LEXIS 18148, at *1 (1st Cir. Jan. 21, 2021).

On January 21, 2021, Mr. Meader filed his second motion for compassionate release. *Emergency Mot. for Compassionate Release Under 18 U.S.C. 3582(c)(1)(A)(i)* (ECF No. 127). On February 17, 2021, Judge Hornby denied the motion. *Decision and Order on Mot. for Compassionate Release* (ECF No. 138) (*February 2021 Order*). On March 8, 2021, Mr. Meader moved for reconsideration, *Emergency Mot. for Reconsideration of Compassionate Release* (ECF No. 139), which Judge Hornby denied on March 10, 2021. *Order on Emergency Mot. for Reconsideration* (ECF No. 140) (*March 2021 Order*).

On March 30, 2021, Mr. Meader filed a motion requesting medical treatment. *Def.'s Mot. for Medical Treatment* (ECF No. 143). On April 21, 2021, the Magistrate Judge dismissed the motion as moot, reasoning that, setting aside any jurisdictional issues, Mr. Meader had "consulted with Bureau of Prisons medical personnel [on March 30, 2021] and a treatment plan for [Mr. Meader's] medical condition was developed." *Order on Def.'s Mot. Regarding Medical Treatment* at 1-2 (ECF No. 145). On May 11, 2021, after reviewing Mr. Meader's reply in support of his motion for

3

medical treatment, filed after the Court dismissed it as moot, the Magistrate Judge issued a Recommended Decision finding no reason for the Court to intervene in the Bureau of Prisons (BOP)'s management of Mr. Meader's medical care. *Recommended Decision* (ECF No. 147). On June 3, 2021, Judge Hornby affirmed the Recommended Decision and dismissed Mr. Meader's motion seeking medical treatment. *Order Affirming Recommended Decision of the Magistrate Judge* (ECF No. 148).

In January 2022, Mr. Meader's cases, Nos. 1:95-cr-00025 and 1:98-cr-00042, were reassigned to Judge John A. Woodcock, Jr. upon Judge Hornby's retirement. On January 18, 2022, Mr. Meader filed his third motion for compassionate release, citing the First Step Act.[1] *Mot. for an Order Authorizing Compassionate Release (Section 3582(c)(1)(A))* (ECF No. 149) (*Def.'s Mot.*). On January 25, 2022, Mr. Meader filed a motion to supplement his request for compassionate release, *Mot. to Suppl. Compassionate Release and Request for Emergency Consideration* (ECF No. 151) (*Def.'s Suppl. Mot.*), and a request for appointment of counsel for his compassionate release petition. *Mot. for Appointment of Counsel for Compassionate Release Proceedings* (ECF No. 152) (*Def.'s Mot. for Appointment of Counsel*).

Mr. Meader has submitted numerous letters from members of his family in support of his release. On January 25, 2022, Mr. Meader submitted letters of support from his sister, Donna C. Wade, and his fiancé, Judy P. McMillan, *Letters of Supp.* (ECF No. 150), and on January 26, 2022, he filed a letter from his son, Jody R. Meader. *Letter of Supp. from Jody R. Meader* (ECF No. 153). On January 28, 2022,

---

[1]     The Government did not file a response to Mr. Meader's latest motion.

Mr. Meader filed letters of support from his grandson and his daughter.  *Letters of Supp. from Levi Meader and Lisa Meader* (ECF Nos. 155, 156).  On February 2, 2022, he submitted another letter of support from Devin Meader, one of his grandsons. *Letter of Supp. from Devin Meader* (ECF No. 157).  On February 9, 2022, Mr. Meader submitted a support letter from Joseph Burns, his son.  *Letter of Supp. from Joseph Burns* (ECF No. 158).  On March 1, 2022, Mr. Meader submitted a support letter from Jamie Meader, his great-niece.  *Letter of Supp. from Jamie Meader* (ECF No. 159). Finally, on March 1, 2022, Mr. Meader wrote the Court to update his medical situation and to urge the Court to be fair to him.  *Letter from Kenneth Leon Meader* (ECF No. 160) (*Def.'s March 1, 2022 Letter*).

## II.     THE PETITIONER'S POSITION

### A.     Kenneth Meader's Motion for Compassionate Release

In his motion for compassionate release Mr. Meader submits that he "fully meets the conditions of . . . [U.S.S.G § 1B1.13], as 'extraordinary and compelling reasons warrant the reduction'" to his sentence, he "is not a danger to the safety of any other person or to the community," and a "reduction is consistent with [the] policy statement [of § 1B1.13]."  *Def.'s Mot.* at 1.  He emphasizes that he is "currently 72 and a half" and "has served [] over . . . 26 years in federal prison."  *Id.*

Mr. Meader says he was "diagnosed with recurrent prostate cancer on approximately March 30, 2021," and around that same time his "alpha-feto protein [AFP] spiked . . . which is an indicator of liver cancer or major liver disease."  *Id.*  He also says that "[o]n 12/16/21 [he] was sadly informed his liver cancer has returned

and is pending a surgical oncologist consult." *Id.* at 2. He claims "the BOP has stone-walled and interfered with the diagnosis and treatment of his prostate cancer [and] his rising AFP tumor marker." *Id.* He goes on to say that, between contracting COVID-19 and being denied outdoor recreation for six months, his conditions have worsened during the pandemic and he is worried about variants and breakthrough infections because they are "more serious for the elderly." *Id.* at 3. Mr. Meader submits that he has a clear release plan with his fiancé in Louisiana, his "disciplinary record [is] free of any violence," and he has taken advantage of "numerous programming courses" while in prison. *Id.* at 2. He urges the Court for relief "by way of reducing his sentence by an appropriate amount of time or to time served with his term of supervised release to be extended if deemed appropriate." *Id.* at 3.

## B.   Kenneth Meader's Supplemental Motion and Request for Appointment of Counsel

In his motion to supplement his petition for compassionate release, Mr. Meader "request[s] emergency consideration pursuant to an active COVID-19 breakout at Butner Medium II FCI" and the impact of "the Omicron COVID-19 breakout in North Carolina" on his medical treatment. *Def.'s Mot. to Suppl.* at 1. He says the COVID breakout, with two prison dorms on full lockdown, "places [his] life in grave danger greatly beyond the normal conditions of incarceration" which "warrants compassionate release for an elderly offender [who] is 72 with active liver and prostate cancer." *Id.* He informs the Court that "[o]n December 21, 2021, [he] was taken to Duke University Medical Center and was provided more information about

6

[his] liver cancer" and given "the proper tests." *Id.* Mr. Meader "was found to now have a large liver tumor" that "may require more serious treatment." *Id.* As "the major hospitals in North Carolina are inundated with COVID-19," which he reasons may prevent him from receiving urgent treatment, Mr. Meader submits that his liver cancer "justifie[s] independently compassionate release and emergency consideration." *Id.* at 2. He goes on to explain that he is also "battling prostate cancer," and was told by a BOP urologist that he needed an MRI. *Id.* He says the BOP is "stonewalling" a biopsy and prostate cancer treatments. *Id.* Mr. Meader's "final major concern" is that he will be placed in COVID-19 quarantine for his recovery period following liver surgery. *Id.* at 3. He says "after a major cancer surgery one should not be punished and put in the SHU." *Id.* Mr. Meader concludes by reaffirming the arguments made in his previous motions for compassionate release, urging the Court that here "a reduction in sentence is not only fully justified, but humane." *Id.*

In his related motion for appointment of counsel, Mr. Meader says that he is "afraid that [while undergoing surgery for liver cancer sometime in January 2022 he] will need assigned counsel to ensure [his] case moves forward and the Court is updated appropriately with [his] medical status." *Def.'s Mot. for Appointment of Counsel* at 1. He notes that he is "unable to afford counsel" and that he "has additional urology consults scheduled [for his recurrent prostate cancer] and at each one [he] may be subject to quarantine which will completely limit his ability to have any legal help." *Id.*

## III.   LEGAL STANDARD

"Section 3582(c)(1)(A) authorizes a court to reduce a term of imprisonment when 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Ruvalcaba,* No. 21-1064, _F.4th_, 2022 U.S. App. LEXIS 4235, at *8 (1st Cir. Feb. 15, 2022). "To grant the motion, the district court must find both that the defendant has presented an 'extraordinary and compelling' reason warranting a sentence reduction, . . . and that 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *Id.* (quoting § 3582(c)(1)(A)).

The United States Sentencing Commission's current policy guidance[2] for addressing compassionate release motions brought by the Director of the BOP, issued pursuant to Guideline § 1B1.13, "was last modified in November of 2018—before the F[irst] S[tep] A[ct] (FSA) amended the compassionate-release statute to allow for prisoner-initiated motions." *Id.* at *11.   In *United States v. Ruvalcaba*, the First Circuit resolved that district courts are not constrained by the Sentencing Commission's 2018 policy statement in adjudicating prisoner-initiated motions for compassionate release.   *Id.* at *14-16 (emphasizing that Section 603(b) of the FSA "effected a paradigm shift in how compassionate release would function" and that "[g]iven the profound nature of this paradigm shift, it is fair to say that the 'purposes' and 'appropriate use' of the compassionate-release statute have swelled beyond those

---

[2]      The Sentencing Commission's list of "four categories of extraordinary and compelling reasons: medical conditions; age; family circumstances; and a catch-all for other reasons deemed appropriate by the BOP. . . remains unchanged today."   *Ruvalcaba*, 2022 U.S. App. LEXIS 4235, at *10-11 (citing U.S.S.G. § 1B1.13 cmt. n.1 (A) – (D)).   "[S]ection 1B1.13 also requires a finding that the defendant is not dangerous in order to grant compassionate release based on extraordinary and compelling reasons."   *Id.* at *10 n.5.

that inhered in the statute when the Sentencing Commission issued its original policy statement").

The First Circuit clarified that the absence of an applicable policy statement does not leave the district court's discretion "unbounded," rather it remains "circumscribed by statutory standards, which obligate the district court to find a reason that is both 'extraordinary and compelling.'" *Id.* at \*18-19 (citing *United States v. Canales-Ramos*, 19 F.4th 561, 566 (1st Cir. 2021) ("[T]he 'extraordinary and compelling' standard is logically guided by the plain meaning of those terms")). "[M]oreover, the current policy statement—though not 'applicable'—nonetheless may serve as a non-binding reference." *Id.* at \*19.

Thus, until the Sentencing Commission issues updated guidance applicable to prisoner-initiated motions, "the district courts will have to assess prisoner-initiated motions for compassionate release primarily through the lens of the statutory criteria." *Id.* "Ultimately, . . . it is within the district court's discretion—constrained only by the statutory criteria[3] and any applicable policy statement—to make that [individualized assessment of a myriad of factors], case by case." *Id.* at \*29-30.  A court "may consider any complex of circumstances raised by a defendant as forming an extraordinary and compelling reason warranting relief." *Id.* at \*32.

If the prisoner meets the extraordinary and compelling circumstances standard necessary to justify compassionate release, "the district court must [also]

---

[3]     The only "explicit limitation on what may comprise an extraordinary and compelling reason" is "that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" *Id.* at \*22 (alterations in *Ruvalcaba*) (quoting 28 U.S.C. § 994(t)).

consider any applicable section 3553(a) factors," *id.*, to "determine whether, in its discretion, the reduction . . . is warranted in whole or in part under the particular circumstances of the case." *United States v. Saccoccia*, 10 F.4th 1, 4 (1st Cir. 2021) (omission in *Saccoccia*).  In particular, before granting the petition, a court must assess,

> [t]he nature and circumstances of the offense and the history and characteristics of the defendant, the need . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; [and] to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).  "Though the [§] 3553(a) factors may serve as an independent basis for a district court's decision to deny a compassionate-release motion," they "need only be addressed if the court finds an extraordinary and compelling reason favoring release." *Saccoccia*, 10 F.4th at 8.

The movant bears the burden of proving that he is entitled to a sentence reduction, and the Court has discretion to determine whether "the reduction . . . is warranted in whole or in part under the particular circumstances of the case." *United States v. Texeira-Nieves*, 23 F.4th 48, 52 (1st Cir. 2022) (quoting *Saccoccia*, 10 F.4th at 4); *see Saccoccia*, 10 F.4th at 4 (stating that the First Circuit's standard of review "[r]ecogniz[es] that the compassionate-release statute provides that a district court's decision to grant or deny a compassionate-release motion is discretionary").

## IV.   DISCUSSION

### A.   Judge Hornby's Prior Orders

In March 1996, Judge D. Brock Hornby presided over Mr. Meader's jury trial, and in October 1996, Judge Hornby imposed the 420-month period of incarceration on Mr. Meader's three original convictions.  In ruling on this motion, it is important to understand Judge Hornby's reasoning in denying Mr. Meader's prior motions.

Since November 2020, Judge Hornby issued three decisions on Mr. Meader's motions for compassionate release, each denying Mr. Meader's requests.  *November 2020 Order*; *February 2021 Order*; *March 2021 Order*.  In his orders, Judge Hornby concluded that Mr. Meader had proven that he met the "extraordinary and compelling reasons" for release standard, based on a combination of his medical conditions and the state of the pandemic.  *November 2020 Order* at 3 ("If the seriousness of Meader's medical conditions and his susceptibility to infection were the end of the matter, they—combined with the pandemic's spread—would satisfy the standard of 'extraordinary and compelling reasons' both as defined by the Guideline policy statement, 1B1.13 cmt. n.1(A)-(B), and the broader standards permitted by [*United States v.*] *Fox*[, No. 2:14-cr-03-DBH, 2019 U.S. Dist. LEXIS 115388, at *4-5 (D. Me. July 11, 2019), *aff'd J. of Ct. of Appeals for the First Circuit*, No. 19-1785 (1st Cir. July 23, 2020)] and [*United States v.*] *Brooker*[, 976 F.3d 228, 237-38 (2d Cir. 2020)]"); *February 2021 Order* at 5 ("For those same reasons, I once again **DENY** Meader's motion for compassionate release"); *March 2021 Order* at 1 ("As I said before, if Meader's 'medical conditions and his susceptibility to infection were the end of the

matter, they—combined with the pandemic's spread—would satisfy the standard of 'extraordinary and compelling reasons'").

As this Judge interprets Judge Hornby's rulings, the basis of Judge Hornby's denials of Mr. Meader's motions for compassionate release was not the seriousness of his medical conditions, rather it was the seriousness of his prior offenses.   Judge Hornby explained that his conclusion that Mr. Meader met the "extraordinary and compelling reasons" standard under the First Step Act "is not the end of the analysis in determining whether a motion for compassionate release should be granted." *November 2020 Order* at 4.   Judge Hornby related that when he sentenced Mr. Meader in 1996, he was "an extreme danger to the public, certainly in the top handful of the multitude of defendants I have sentenced over the past 30 years." *Id.*   Judge Hornby quoted what he told Mr. Meader at his 1996 sentencing hearing, namely that his crimes were "vicious, premeditated, heinous.   They're unspeakable, there aren't adequate adjectives in the language to describe them." *Id.* (quoting *Sentencing Tr.* at 114 (ECF No. 79)).   Judge Hornby described Mr. Meader as a "vicious predator" and told him that "the rest of your useful life is going to be spent in federal prison." *Id.* (quoting *Sentencing Tr.* at 114).   Judge Hornby then described the "heart of the offense for which [he] sentenced Meader" and characterized it as "heinous and violent and involv[ing] sexual abuse." *Id.* at 5.   Judge Hornby noted that his crimes were "not enough," but that Mr. Meader then "attempted to escape from custody and received 56 more months from another judge." *Id.* at 6.

Again, Judge Hornby denied Mr. Meader's first motion for compassionate release not because he did not accept the potentially drastic nature of his medical conditions or the positive views of his family members, but because the extraordinarily reprehensible nature of his federal crimes, and his criminal history, required ongoing incarceration. Judge Hornby denied Mr. Meader's second motion for "those same reasons," *February 2021 Order* at 5, and he denied his third motion because "[n]othing relevant has changed since my last ruling, and the explanation would serve only to increase Meader's unhappiness with the decision and my role." *March 2021 Order* at 2.

The Court has carefully reviewed Mr. Meader's January 18, 2022 motion and supplemental filings to determine whether his most recent request contains new information that would justify his compassionate release now. Mr. Meader submitted recent medical records with his latest motion, which confirm Judge Hornby's assessment of the severity of his conditions. *See Def.'s Mot.*, Attach. 2, *Bureau of Prisons Health Services Clinical Reports*, at 5-9. These updated records continue to support a finding, just as Judge Hornby made, that Mr. Meader has met the "extraordinary and compelling" standard of the First Step Act.

However, Mr. Meader has not addressed the rationale underlying Judge Hornby's earlier denials, namely the "heinous and violent" nature of the criminal offenses for which he is incarcerated. *November 2020 Order* at 5. The Court acknowledges Mr. Meader's sincere concerns for his declining health as the pandemic

continues, however his health status does not present different circumstances for the separate § 3553 analysis that determined the outcome of his previous motions.

## B.     Extraordinary and Compelling Reasons

To grant Mr. Meader's motion under 18 U.S.C. § 3582(c)(1)(A)(i), the Court must find "extraordinary and compelling reasons warrant[ing]" a reduction in sentence.  The Court reviewed Mr. Meader's account of his deteriorating health and ongoing risk of contracting COVID "due to his advanced age and immunocompromised state." *Def.'s Mot.*, Attach. 1, *Br. in Supp. of Compassionate Release* at 6 (*Def.'s Br.*).  Mr. Meader contends that his "serious deterioration in physical or mental health because of the aging process" and numerous specific medical conditions present extraordinary and compelling circumstances. *Def.'s Mot.* at 1.

In his brief in support of his motion, Mr. Meader insists that he "falls squarely into conditions that reach extra-ordinary and compelling, based on the policy statements and the guidance of the First Circuit." *Def.'s Br.* at 1.  He cites *Saccoccia*, urging the Court that the BOP's "material interference in or stonewalling of medical testing or treatment" favors granting his petition. *Id.* at 1.  Specifically, Mr. Meader says that he "has been waiting for an urgent prostate biopsy that was ordered by his urologist in November of 2020" on suspicion of recurrent prostate cancer due to his rising PSA levels. *Id.* at 5.  In his most recent filings, Mr. Meader maintains that the BOP is "stonewalling"[4] treatment, but updates the Court that in December of 2021,

---

[4]     Mr. Meader claimed he was being wrongfully denied treatment by the BOP in his previous motions.  Judge Hornby pointed out that "[t]o the extent Meader believes he has an Eighth Amendment

he "was provided more information about [his] active liver cancer" and given "the proper tests" at Duke University Medical Center, and that on January 7, 2022, he met with a BOP urologist regarding his prostate cancer. *Def.'s Mot. to Suppl.* at 1-2. In his most recent letter, Mr. Meader informed the Court that, as of February 21, 2022, he had not yet received either recommended surgery: one for his liver cancer and the other for his prostate cancer. *Def.'s March 1, 2022 Letter* at 1.

> On November 17, 2020, Judge Hornby concluded that:
>
> [i]f the seriousness of Meader's medical conditions and his susceptibility to infection were the end of the matter, they—combined with the pandemic's spread—would satisfy the standard of 'extraordinary and compelling reasons' both as defined by the Guideline policy statement, 1B1.13 cmt. n.1(A)-(B), and the broader standards [as recognized in this District].

*November 2020 Order* at 3. Judge Hornby reaffirmed this assessment in his orders dismissing Mr. Meader's subsequent motions, *see March 2021 Order* at 1; *February 2021 Order* at 3, and he considered Mr. Meader's additional justifications that COVID-19 conditions had worsened at his FCI location and "his cancer has worsened and is not being properly treated." *February 2021 Order* at 2-3. Judge Hornby also recognized that "BOP records show that a doctor recommended a bone scan and a prostate biopsy" due to Mr. Meader's elevated PSA levels but "the biopsy has not yet been conducted." *Id.* at 3 n.4.

Recent medical records confirm and amplify Judge Hornby's assessment that, based on his medical conditions alone, Mr. Meader has shown extraordinary and

---

claim for deliberate indifference to serious medical needs . . . this is not the vehicle nor the court for such a claim; such a claim belongs in the District where he is in custody." *February 2021 Order* at 3 n.4.

compelling reasons to justify his release. This was Judge Hornby's conclusion in 2020 and 2021 and it is this Judge's conclusion today. However, just as Judge Hornby observed, this finding alone is "*not* the end of the matter," *February 2021 Order* at 3 (emphasis in original), and is insufficient to grant Mr. Meader's motion for compassionate release. This is because, once a "extraordinary and compelling" finding is made, the First Circuit has directed the district courts to apply the 18 U.S.C. § 3553(a) criteria to motions for compassionate release. *Texeira-Nieves*, 23 F.4th at 52. It is on that basis that the Court concludes that Mr. Meader's motion must fail.

### C.   The Section 3553(a) Factors

As the First Circuit has explained, "a supportable determination that the balance of the section 3553(a) factors weighs against a sentence reduction constitutes an independent reason to deny compassionate release." *Id.* at 55. Judge Hornby denied Mr. Meader's motions for compassionate release, "despite [Mr. Meader's] serious medical conditions," upon his application of the § 3553 factors. *See February 2021 Order* at 4. Judge Hornby explained that "[n]otwithstanding the current COVID-19 conditions and Meader's cancer condition, [his] assessment of those factors has not changed" as he could not "determine with confidence one way or the other whether now, 24 years after [he] sentenced him, Meader remains a danger to the public." *Id.*; *November 2020 Order* at 5.

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the Court has considered whether the § 3553(a) factors favor Mr. Meader's release at this time. They do not. Although the

Court considered each factor, it concludes that the nature and circumstances of Mr. Meader's offenses and the need to protect the public are the most pertinent considerations in Mr. Meader's case.  In his most recent motion, Mr. Meader has not presented materially different circumstances from those alleged in his previous motions to justify a different outcome now.

In his November 2020 Order, Judge Hornby said: "[t]he heart of the offense for which I sentenced Meader was heinous and violent and involved sexual abuse. . . Following that sentence, Meader attempted to escape from custody, . . . [and] [h]e had a previous conviction for statutory rape and unlawful sexual contact with a 13-year-old when he was 36." *November 2020 Order* at 5-6.  Judge Hornby reasoned that "reducing Meader's sentences now, even though he is old and sick, would diminish each of these punishment values—that the penalty 'reflect the seriousness of the offense, . . . promote respect for the law, . . . provide just punishment . . . [, and] afford adequate deterrence.'" *Id.* at 6 (quoting 18 U.S.C. § 3553(a)(2)).

As the judge who presided over Mr. Meader's trial in 1996, Judge Hornby had the unique advantage of hearing the evidence and imposing sentence with the greater knowledge that comes from a defendant's physical presence in a courtroom.  Nevertheless, this Judge has made an independent assessment of the newly filed motion.  To this end, the Court reviewed Mr. Meader's original PSR for his three original federal offenses and his subsequent PSR for engaging in a conspiracy to escape.  No. 1:95-cr-00025-JAW, *Revised Presentence Investigation Report* (May 24,

1996) (*1996 PSR*); No. 1:98-cr-00042-JAW, *Revised Presentence Investigation Report* (March 17, 1999) (*1999 PSR*).

Even now, twenty-seven years after Mr. Meader committed his first federal offenses, his offense conduct remains shocking and chilling. Mr. Meader's crimes were premediated, prolonged, violent, cruel, and sexually and emotionally abusive. Mr. Meader, who was a felon, did not merely possess a firearm, but he also repeatedly used the firearm to intimidate and frighten his female victim and to force her to submit to his will over the course of over twelve hours. The Court could go on, but Mr. Meader himself knows what he did. He acknowledges, as he should, that what he did was "very wrong" and he maintains that he has "changed and become a better person." *Def.'s March 1, 2022 Letter* at 1.

If Mr. Meader's April 1995 crimes were his only crimes, that would be serious enough and would give the Court pause about his early release. But the PSRs establish that his April 1995 actions were not aberrational. Ten years earlier, when he was thirty-six, he was found guilty of raping and engaging in unlawful sexual contact with a thirteen-year old girl between August 2 and September 5, 1985, and he was sentenced on August 31, 1988 in Kennebec County Superior Court to ten years of incarceration, all but four years suspended, to be followed by four years of probation.[5] *See 1996 PSR* ¶ 66; *State v. Meader*, 564 A.2d 1177 (Me. 1989). In fact,

---

[5]      As noted elsewhere, Mr. Meader was tried, convicted, and sentenced in 1988 for rape and unlawful sexual contact with a thirteen-year-old girl. *1996 PSR* ¶ 66. The Court was surprised to read that as recently as February 2021, Mr. Meader apparently denied that he committed the state sex crimes. *See Letter from Gary Seamon* at 1-2 (ECF No. 137). Moreover, in a letter to the Court filed February 11, 2021, Gary Seamon accuses the victim of the federal crimes of being a liar and having "lied about things that happened with Ken [Meader] as well." *Id.* at 2.

Mr. Meader was still on state probation when he committed his violent federal offenses. *1996 PSR* ¶ 68. Next, having committed these horrible federal crimes in April 1995 and after being sentenced by Judge Hornby, between September 24, 1997 and October 10, 1997, Mr. Meader sought to avoid the consequences of his actions by conspiring with his son Jody Meader to escape from custody, and in 1999, he received another federal sentence from another federal judge.[6] *1999 PSR* ¶¶ 1-10.

In conclusion, this Judge concurs with Judge Hornby's assessment, which he articulated at Mr. Meader's October 28, 1996 sentencing hearing, that Mr. Meader's crimes were "vicious, premeditated, heinous. They're unspeakable, there aren't adequate adjectives in the language to describe them." *November 2020 Order* at 4 (quoting *Sentencing Tr.* at 114). Moreover, Mr. Meader's April 1995 crimes were preceded and followed by extremely grave crimes, especially his sexual misconduct and rape of a thirteen-year old.

---

Mr. Seamon's letter is most disturbing. The Court is not sure whether Mr. Meader authorized Mr. Seamon's comments about the victim of his federal crimes and about his responsibility for his criminal actions, but the Court is nonplussed that Mr. Meader would apparently tell Mr. Seamon in February 2021 that he did not commit the rape and unlawful sexual contact crimes in 1985 for which he was convicted and served time.

Even though Mr. Meader submitted Mr. Seamon's letter to the Court in support of his prior motion for compassionate release, the Court has not considered it because it comes not from Mr. Meader but from his friend, Gary Seamon, and the Court cannot be certain that it represents Mr. Meader's opinions. If the Court considered Mr. Seamon's disparagement of the victims of Mr. Meader's crimes, it would provide another ground to reject the motion for compassionate release, because Mr. Meader, after serving decades in federal prison, is now blaming the victims for his own crimes.

[6]      On April 21, 1999, Judge Morton A. Brody imposed a sentence of sixty months of incarceration on the conspiracy to escape conviction. *United States v. Meader*, No. 1:98-cr-00042-JAW, *J.* (ECF No. 25). Mr. Meader appealed his original sentence on this conviction and on November 15, 1999, the First Circuit affirmed some aspects of Mr. Meader's sentence but remanded the conspiracy to escape case for resentencing on one issue. *See United States v. Meader*, 195 F.3d 66, 68 (1st Cir. 1999). On January 13, 2000, the late Judge Brody imposed an incarcerative period of fifty-six months to run consecutively to the sentence Judge Hornby imposed on Mr. Meader's original federal charges. *United States v. Meader*, No. 1:98-cr-00042-JAW, *Am. J.* (ECF No. 37).

Particularly in light of his prior and subsequent crimes, Mr. Meader's April 1995 crimes were manifestly serious and, in the Court's view, deserve considerable punishment, notwithstanding the fact that Mr. Meader has already served nearly twenty-seven years in prison. Particularly where a defendant is involved in a pattern of serious crimes, including crimes against female victims, the completion of a substantial sentence is necessary to reflect its seriousness, protect the public, and prevent others from engaging in comparable criminal behavior. Thus, on balance, the 18 U.S.C. § 3553(a) factors do not support Mr. Meader's release.

Citing his family's letters of support, Mr. Meader, "now an aged old man," asserts that he "is not a danger to the community or anyone." *Def.'s Br.* at 3. He goes on to note that he "has not received a single disciplinary action that is reflective of dangerousness," he "has been a model inmate that has supported his family," and he has "taken the necessary steps to reenter society successfully." *Id.* at 4-5. Mr. Meader emphasizes his rehabilitative efforts during incarceration, his arrangements for a reintroduction to the community upon his release, and the fact that he has spent significant time in prison already serving his lengthy sentence. However, "'[m]erely raising potentially mitigating factors does not guarantee' a favorable decision" under the discretionary balancing of factors to warrant compassionate release. *Saccoccia*, 10 F.4th at 10 (quoting *United States v. Davila-Gonzalez*, 595 F.3d 42, 49 (1st Cir. 2010)). As the First Circuit has emphasized, "compassionate release motions should not devolve into satellite sentencing hearings." *Id.* (noting, "in the analogous [§]3582(c)(2) context," the Supreme Court's explanation that "a sentence modification

20

. . . is 'not a plenary resentencing proceeding'" (quoting *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1967 (2018))).

### D.    Summary

The Court concludes that, given the nature and circumstances of the offense and the need to protect the public, releasing Mr. Meader early would contravene the 18 U.S.C. § 3553(a) factors.    Mr. Meader is scheduled to be released from incarceration on February 3, 2029, and the Court hopes Mr. Meader will return to society a law-abiding citizen.   In their letters of support, Mr. Meader's fiancé, sister, daughter, sons, and grandchildren expressed their commitment to support him upon his release and their belief that Mr. Meader is a changed man.  *Def.'s Mot.*, Attach. 2, *Letter from Judy P. McMillan* at 18-19; *Letters of Support*; *Letter from Jody R. Meader*; *Letter from Lisa Meader*.   His grandsons write that Mr. Meader is "kind, intelligent, and religiously guided," *Letter from Levi Meader*, and a "good human being." *Letter from Devin Meader*.

Judge Hornby said it best, "redemption should never be considered impossible," *November 2020 Order* at 5, and, like Judge Hornby, this Judge has "no crystal ball" to predict Mr. Meader's future.  *February 2021 Order* at 4.  Certainly, the Court hopes that Mr. Meader will make a full recovery from his current medical conditions and that when he is released in 2029, his family's confidence in him will turn out to be well placed.   However, on the record before the Court at this time, Mr. Meader is not an appropriate candidate for compassionate release.

### E.    Kenneth Meader's Motion for Appointment of Counsel

Defendants have no automatic right to counsel in post-conviction proceedings. *United States v. Frechette*, No. 2:18-cr-112-DBH-04, 2020 U.S. Dist. LEXIS 124857, *3-4 (D. Me. July 16, 2020) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)). District courts have discretion over whether to grant a defendant's motion for appointment of counsel. *Id.* The Court concludes that it is not necessary to appoint counsel at this time to resolve any complex legal or factual issues related to Mr. Meader's petition. *See United States v. Dent*, No. 2:15-cr-10-DBH-01, 2020 U.S. Dist. LEXIS 194814, *4 (D. Me. Oct. 21, 2020) (finding that appointment of counsel would not assist the court in resolving defendant's motion for compassionate release); *United States v. Gutierrez*, No. CR 06-40043-FDS-2, 2020 U.S. Dist. LEXIS 59049, at *2 (D. Mass. Apr. 3, 2020) (denying motion to appoint counsel to assist with First Step Act claim after concluding defendant was not eligible for relief under the Act).

## V.    CONCLUSION

The Court GRANTS Kenneth Meader's Motion to Supplement Compassionate Release and Request for Emergency Consideration (ECF No. 151) and DISMISSES without prejudice Kenneth Meader's Motion for Compassionate Release (ECF No. 149) and Motion for Appointment of Counsel (ECF No. 152).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 18th day of March, 2022.