UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:95-cr-00025-JAW |
| | ) | |
| KENNETH LEON MEADER | ) | |

**ORDER ON MOTION FOR RELEASE PENDING APPEAL**

A defendant appealed the Court's denial of his most recent motion for compassionate release to the First Circuit. Before the Court is the defendant's motion for release on bail pending the outcome of his appeal. The Court concludes that it lacks authority to grant the motion under 18 U.S.C. § 3145(c) and Federal Rule of Criminal Procedure 9(b), and that even if it had the authority to grant the defendant's request for release, the defendant has not demonstrated by clear and convincing evidence that his appeal raises a substantial question of law or fact to meet the standard for release pending appeal.

**I.     PROCEDURAL BACKGROUND**

The Court recounts the background relevant to Kenneth Meader's most recent motion for compassionate release, which the Court denied on March 18, 2022, and his pending motion for release pending appeal of that decision. A more exhaustive account of the factual and procedural history of Mr. Meader's cases can be found in the Court's March 18, 2022, order. *See Order on Mot. for Compassionate Release* (ECF No. 161) (*Order*).

In January 2022, Mr. Meader's cases, Nos. 1:95-cr-00025 and 1:98-cr-00042, were reassigned to Judge John A. Woodcock, Jr. upon Judge Hornby's retirement. On January 18, 2022, Mr. Meader filed his third motion for compassionate release, citing the First Step Act.[1] *Mot. for an Order Authorizing Compassionate Release (Section 3582(c)(1)(A))* (ECF No. 149) (*Def.'s Mot. for Compassionate Release*). On January 25, 2022, Mr. Meader filed a motion to supplement his request for compassionate release, *Mot. to Suppl. Compassionate Release and Request Emergency Consideration* (ECF No. 151), and a request for appointment of counsel for his compassionate release petition. *Mot. for Appointment of Counsel for Compassionate Release Proceedings* (ECF No. 152) (*Def.'s Mot. for Appointment of Counsel*).

In its March 18, 2022, Order, the Court first observed that Mr. Meader's "recent medical records," submitted with his latest motion for compassionate release, "confirm and amplify Judge Hornby's assessment that, based on his medical conditions alone, Mr. Meader has shown extraordinary and compelling reasons to justify his release" under the First Step Act. *Order* at 15-16. Following a detailed review of the relevant factors, however, the Court concluded that "given the nature and circumstances of the offense and the need to protect the public, releasing Mr. Meader early would contravene the 18 U.S.C. § 3553(a) factors." *Id.* at 21.

On April 4, 2022, Mr. Meader filed his notice of appeal of the Court's Order denying his motions for compassionate release and appointment of counsel with the

---

[1]   The Government did not file a response to Mr. Meader's latest motion.

Court of Appeals for the First Circuit. *Notice of Appeal* (ECF No. 162).[2] His appeal is currently before the First Circuit. On June 21, 2022, Mr. Meader filed a motion for release from incarceration pending appeal. *Mot. for Release Pending Appeal* (ECF No. 166) (*Def.'s Mot.*). On July 12, 2022, the Government responded in opposition. *Gov't's Resp. to Def.'s Mot. for Bail Pending Appeal* (ECF No. 168) (*Gov't's Opp'n*). On August 2, 2022, Mr. Meader filed his reply in support of his request for release on bail. *Def.'s Traverse to Gov't's Opp'n for Bail Pending Appeal* (ECF No. 170) (*Def.'s Reply*).

## II. THE PARTIES' POSITIONS

### A. Kenneth Meader's Motion for Release Pending Appeal

Mr. Meader invokes 18 U.S.C. § 3154(c) and Federal Rule of Appellate Procedure 9(b) as grounds for this Court "to act on [his] application for release pending appeal." *Def.'s Mot.* at 1. He asserts that he has presented "clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any person or the community" on the basis of his age, family support, prison disciplinary record, and overall "extremely low risk of recidivism." *Id.* at 2-3. He submits that his "recurrent liver and prostate cancer" and other health issues "even further reduces

---

[2] The records before the Court do not differentiate between Mr. Meader's 35-year sentence on No. 1:95-cr-00025-JAW and his fifty-six-month consecutive sentence on No. 1:95-cr-00025-JAW; however, at some point, Mr. Meader will complete his sentence on No. 1:95-cr-00025-JAW and will begin to serve his sentence on his conspiracy to escape since the fifty-six-month escape sentence runs consecutively to the 35 year sentence. The math suggests that the transition between the two sentences will not take place until some time in 2024, but the Court does not have the good time calculations for each sentence and does not know the exact date. For purposes of this order, the point is that Mr. Meader is still serving his original 35 year sentence and, therefore, the instant proceedings based only on the original sentence still are appropriate.

any risk of flight and even further mitigates any danger to any person or the community." *Id.* Mr. Meader reasons that his successful participation in BOP programming "reflects [his] ability to follow strict rules and function as a law abiding citizen." *Id.* at 3.

Turning to the next prong under § 3143, Mr. Meader asserts that his appeal presents "numerous substantial questions of both law and fact" that "will likely result in a reversal with a sentence less than the total already served." *Id.* at 4. He goes on to reason that under the First Circuit's recent decision in *United States v. Texeira-Nieves*, 23 F.4th 48 (1st Cir. 2022), "[t]here is not even a question that the time he has served has been more than sufficient for his indicted crimes." *Id.* He says the Court failed to consider whether his sentence was greater than necessary "and removing that overarching principle from his denial is reversable error." *Id.* at 4-5.

Mr. Meader goes on to argue that "his career offender status was based on an unconstitutional residual clause [for which] he would no longer qualify based on his predicate crimes," placing him in a sentencing range of 235-293 months instead. *Id.* at 5. Mr. Meader emphasizes that he "has served a full 324 months" of a greater than necessary sentence. *Id.* He challenges "the initial guideline application level [which] was determined by [prior state] kidnapping and criminal sexual conduct" as a violation of the Sixth Amendment requirement "that a jury makes the determinations of a maximum sentence." *Id.*

Turning to the second step of the compassionate release framework, Mr. Meader says that Court's failure "to give appropriate weight to all relevant § 3553

4

factors" constituted an abuse of discretion. *Id.* at 6. He says that other judges have found sentences of over 25 years reflected the seriousness of the offense, reasoning that "[f]or the purposes of this motion and release pending appeal, it is a close question of whether the time that Mr. Meader has served, well above a Constitutional sentence, fully reflects that seriousness of his offenses." *Id.* He says the Court did not give sufficient weight to his letter "recogni[zing] his conduct was wrong and show[ing] his remorse" and "wholly ignored [his] current characteristics." *Id.* at 7. According to Mr. Meader, "[t]he standard used by the district court would disqualify every single inmate [from] compassionate release if the only nature and circumstances considered was at the time of conviction." *Id.* He also argues that the Court "only focused on his unindicted conduct" and its "[f]ail[ure] to properly analyze the available sentence for Mr. Meader's conduct that was submitted to the jury, which would reflect just punishment, was reversable error." *Id.* at 7-8. Regarding the deterrence factor, Mr. Meader says that he "already provided evidence that he is not a danger to any person or to the community as a requirement for release pending appeal" and says the Court committed reversible error in failing to recognize "that post-sentencing conduct is the best indicator of how an inmate will act in society." *Id.* at 8.

Finally, Mr. Meader disputes the Court's conclusion that he had not presented claims related to inadequate medical treatment before the appropriate court, insisting that the BOP's "stone-wall[ing]" of appropriate treatment for his cancers "cannot be swept under a rug during a determination for compassionate release." *Id.*

5

at 8-9. He concludes that "[r]elease in Mr. Meader's case is appropriate and he has met his burden to prove he is not a flight risk or a danger to any person or to the community and he has presented numerous substantial questions of law and fact that would be close and require reversal where his present time served in conjunction with the expected time to resolve the appeal exceed his present time served." *Id.* at 9. He requests "a detention hearing if necessary to further litigate these issues." *Id.* at 10. In support of his request for release, he attaches a copy of a January 20, 2022, letter to the Court from his fiancé Judy McMillan. *Id.* at 11-14.

### B. The Government's Response

The Government begins by recounting Mr. Meader's 1995 crimes of conviction, his sentencing before Judge Hornby, and subsequent 1997 escape attempt. *Gov't's Opp'n* at 1-4. It then summarizes Judge Hornby and this Judge's opinions denying the multiple motions for compassionate release Mr. Meader has filed since 2020. *Id.* at 5-9. The Government opposes Mr. Meader's latest request for release pending appeal because he "has not shown by clear and convincing evidence that he does not pose a danger to the community and his appeal does not raise substantial or close issues likely to result in reversal or a new trial." *Id.* at 10. Given the fact that neither Judge Hornby nor this Judge found that Mr. Meader no longer posed a danger, the nature of his crimes, and his prior state convictions for statutory rape and unlawful sexual contact with a minor, the Government says that Mr. Meader's mitigating and recidivism arguments "while not meaningless, are insufficient" to meet his burden under § 3143(b)(1)(A). *Id.* at 11.

The Government asserts that Mr. "Meader's claim of complete rehabilitation is belied by his endorsement of Gary Seamon's letter in support of [Meader's] second motion for compassionate release." *Id.* at 12. Although this Court did not consider that letter in denying Mr. Meader's third request for compassionate release, because it was not clear whether Mr. Meader authorized or adopted its statements disputing his state rape convictions and calling the victim of his federal crimes a liar, the Government submits that the record "indicat[es] that Meader, in fact did endorse and agree with at least some of the disturbing representations" in the letter and that his "ongoing efforts to dispute his conviction at age 36 for the statutory rape of a 13-year-old girl casts significant doubt on his assertion that he has completely rehabilitated himself." *Id.* at 12-13. "Given the different requirements and standard of proof for the current motion," the Government urges the Court to consider the letter and Mr. Meader's related representations, "particularly in consideration of dangerousness to the community and to particular members of the community." *Id.* at 13 n.4. According to the Government, "[t]he record in this case, on the whole, does not indicate that . . . Mr. Meader has a diminished capacity to feel victimized by the repercussions of his own criminal acts." *Id.* at 13.

Next, the Government asserts that "[t]here is no close call to be decided here" under the First Circuit's standard for a "substantial question" of law required to secure release on appeal. *Id.* at 14. It emphasizes the discretionary nature of a district court's assessment of "extraordinary and compelling reasons" as well as the applicable § 3553(a) factors in resolving a compassionate release motion, reasoning

7

that "it was not an abuse of discretion for [the Court] to emphasize the nature and circumstances of [Mr.] Meader's offense and the need to protect the public above the other sentencing factors." *Id.* at 14-15.

Turning to Mr. Meader's argument that the Court failed to consider if his sentence "is sufficient but not greater than necessary," the Government says the "Court's determination that requiring Meader to serve the full sentence originally imposed was a reasonable one" and that Mr. Meader's "contention that he has already served enough time is unavailing because it fails to account for the Court's reasonable assessment of the nature and circumstances of [his] offenses." *Id.* at 16. It submits that "[a] 35-year sentence for Meader's horrific crimes and attempted escape is 'readily comprehensible.'" *Id.* at 17 (quoting *United States v. Saccoccia*, 10 F.4th 1, 9 (1st Cir. 2021)). It disagrees with Mr. Meader that "his lengthy sentence was the product of a career offender designation" that would no longer apply because he was never classified as such and therefore the federal "career offender guidelines played no role in his sentence." *Id.* (citing Mr. Meader's 1996 and 1999 PSRs). Rather, the "offense level for his firearms offense was increased pursuant to a cross-reference to the criminal sexual assault guidelines because he possessed the firearm in connection with that offense," which Mr. Meader did not challenge in his motion, and thus Mr. Meader "has failed to establish a substantial question of law regarding the calculation of his sentencing guidelines." *Id.*

Finally, although Mr. Meader insists that "the Court placed too much weight on the nature and circumstances of the offense, just punishment, and the need for

8

deterrence, and too little weight on [his] need for medical treatment," the Government says "[Mr.] Meader's preferred interpretation of those factors does not control." *Id.* at 17-18. It says "there is no reason to believe the First Circuit will doubt" the Court's explanation that it considered all the § 3553(a) factors in addition to Mr. Meader's mitigating evidence, emphasizing that Mr. Meader's presentation of mitigating factors "does not entitle him to relief." *Id.* at 18. Under the abuse of discretion standard, the Government says Mr. Meader has not demonstrated "that the First Circuit will have any factual or legal basis to disturb the judgment currently in effect." *Id.* at 19.

### C. Kenneth Meader's Reply

In reply, Mr. Meader asserts that "an evidentiary hearing or bond hearing would be appropriate to decide material facts and law disputed by the parties." *Def.'s Reply* at 1. He says that "the government perjuriously claims that he was not classified as a career offender," quoting the First Circuit's decision affirming his sentence and conviction, in which it noted that "[t]he penalty also reflected Meader's status as a career offender." *Id.* at 1-2 (quoting *United States v. Meader*, 118 F.3d 876, 879 (1st Cir. 1997)). He argues that "the unconstitutional career offender enhancement was a major factor ignored in the Court's analysis of the § 3553 factors." *Id.* at 2.

Next, Mr. Meader submits that the Government "misrepresents" the Court's prior dangerousness assessments, contending that "Judge Hornby was not able to make a determination one way or the other" and emphasizing that "[n]either Court

9

has had a hearing to make this determination." *Id*. at 3. "As for Gary Seamon's letter," Mr. Meader says he "did not in any way initiate the conversations" and says the Government has had ample opportunity to contact him "to find out why [he feels] strongly that Mr. Meader is not a danger." *Id*. He contends that, regardless of his conduct 27 years ago, "not a single person that has associated with him presently, including thousands of interactions with female staff and medical personnel, would say he is a risk to anyone." *Id*. He says that "any reference to Mr. Meader being guilty of kidnapping or criminal sexual conduct and using those crimes to determine the base offense level is completely unconstitutional" and that the constitutionality of his sentence should have been "highly relevant to a § 3553 analysis in a compassionate release proceeding." *Id*. at 4. Although '[i]t is absolutely impossible to prove that there is zero risk of recidivism," Mr. Meader submits that he "has fully proven it is extremely unlikely in his case," particularly given his age, medical conditions, and his "full and detailed release plan." *Id*. at 5. He says his release to "a strong and robust support system . . . will also provide protection from COVID-19." *Id*.

In conclusion, Mr. Meader says the "Court failed to fully analyze all of [his] arguments and § 3553 factors because it didn't want the compassionate release proceeding to devolve into a plenary resentencing." *Id*. at 6. He "respectfully requests a hearing to further address the arguments of the government and provide testimony of the person that he has become since his criminal actions which will further support granting his motion for release pending appeal." *Id*.

## III. LEGAL STANDARD

Pursuant to 18 U.S.C. § 3145(c), a court is authorized to release a defendant who is subject to detention under § 3143(a)(2) or (b)(2) and who meets the conditions of release in 18 U.S.C. § 3143(a)(1) or (b)(1) where it is "clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c). "[U]nder § 3143(b), to be released pending appeal, a defendant must show by clear and convincing evidence that (1) he is not likely to flee and (2) he is not likely to pose a danger to the safety of any other person or the community; he must also show that the appeal (3) is not for the purpose of delay and (4) raises a substantial question of law or fact likely to result in either a sentence that does not include a term of imprisonment or a reduced sentence to a term of imprisonment less than the expected duration of the appeal process." *United States v. Farlow*, 824 F. Supp. 2d 189, 193 (D. Me. 2011).

If the defendant satisfies the requirements of § 3143(b), the defendant must then clearly establish that there are "exceptional reasons" his continued detention would not be appropriate. 18 U.S.C. § 3145(c). The burden rests on the defendant. *Farlow*, 824 F. Supp. 2d at 193 (citing *United States v. Colon Berrios*, 791 F.2d 211, 211 (1st Cir. 1986)).

Under 18 U.S.C. § 3143(b), a defendant who has been found guilty and sentenced to incarceration "shall . . . be detained" pending appeal unless the Court finds:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under

>section 3142(b) or (c) of this title; and
>(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>>(i) reversal,
>>(ii) an order for a new trial,
>>(iii) a sentence that does not include a term of imprisonment, or
>>(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1).

### IV.   DISCUSSION

#### A.   The Court's Jurisdiction Over the Motion for Release

As a preliminary matter, the Court considers whether it has jurisdiction pursuant to 18 U.S.C. § 3145(c) or Federal Rule of Appellate Procedure 9(b) to grant Mr. Meader's request for release on bail pending his appeal of the Court's denial of his most recent motion for compassionate release. The Court concludes § 3145(c) does not authorize release of a sentence long since final.

##### 1.   Authority Pursuant to 18 U.S.C. § 3145(c)

Courts have applied section 3145(c) to pre-sentencing or pre-incarceration requests for release. *United States v. Cameron*, 756 F. Supp. 2d 148, 2010 U.S. Dist. LEXIS 124777 (D. Me. Nov. 24, 2010)). Mr. Meader was convicted by a federal jury on March 27, 1996, and Judge Hornby sentenced him on October 17, 1996. He has remained in federal custody since then, during which time he was sentenced by Judge Brody to a consecutive fifty-six months of incarceration for conspiracy to escape.

The District Court for the Eastern District of Pennsylvania confronted a similar jurisdictional issue in *United States v. Rodriguez-Collazo*, No. 14-cr-00378-JMY, 2020 U.S. Dist. LEXIS 78386 (E.D. Pa. May 4, 2020). In *Rodriguez-Collazo*, the

defendant sought release from BOP custody at Elkton FCI to home confinement pursuant to "18 U.S.C. § 3145(c), a provision which authorizes temporary release for individuals pending sentencing who are 'not likely to flee or pose a danger to the safety of any other person or the community if released' upon a 'clear[] show[ing]' of 'exceptional reasons why such person's detention would not be appropriate.'" *Id.* at *3-4 (citing 18 U.S.C. §§ 3143(a)(1), 3145(c)). The District Court for the Eastern District of Pennsylvania concluded that "upon sentencing [the d]efendant on January 23, 2015, and remanding him immediately to the BOP's custody, the Court lost its authority to grant bail with release to home confinement under § 3143(a) and, by extension, § 3145(c)." *Id.*

Mr. Meader cites 18 U.S.C. § 3145(c) as authority for the Court to order his release pending the outcome of his appeal. Section 3145(c), however, applies when a person is being held after being found guilty of an offense and is awaiting imposition or execution of a sentence. Mr. Meader is not awaiting a sentence and he is not awaiting execution of a sentence. He has been serving a sentence for years. Because the Court "already indisputably imposed [Mr. Meader's] sentence, and [his] sentence has already been executed," the Court similarly lacks the authority to order his release under 18 U.S.C. § 3145(c). *Id.* at *4 (distinguishing cases where defendants who had not yet been sentenced were granted release under § 3145(c)); *see United States v. Nkanga-Nkanga*, No. 18-cr-713, 2020 U.S. Dist. LEXIS 56188, at *3 (S.D.N.Y. Mar. 31, 2020) (concluding that the court is powerless under Section 3145 because the defendant is not "awaiting imposition or execution of a sentence"); *United*

13

*States v. Hernandez*, No. 19-cr-834, 2020 U.S. Dist. LEXIS 60535, at *1 (S.D.N.Y. Mar. 25, 2020) ("The statute authorizing the temporary release of defendants awaiting trial or sentence . . . does not apply to sentenced defendants."); *see also United States v. Oladimu*, No. 1-cr-10198, 2020 U.S. Dist. LEXIS 55943, at *1 (D. Mass. Mar. 31, 2020) (noting that the statute "is not directly applicable as [d]efendant is awaiting an [a]mended [j]udgment modifying his sentence, not imposition of a sentence in the first instance").

### 2. Authority Pursuant to Rule 9(b)

Mr. Meader also cites Federal Rule of Appellate Procedure 9(b). The Advisory Committee Note to Subdivision(b) is explicit that "this subdivision regulates procedure for review of an order respecting release at a time when the jurisdiction of the court of appeals has already attached by virtue of an appeal from the judgment of conviction." Mr. Meader is currently appealing the Court's denial of his motion for compassionate release, not his original judgments of conviction. Courts typically apply Rule 9(b) to initial detention and bail decisions, not to requests after the imposition of sentence for early release from incarceration or challenges to revocation of supervised release. *See United States v. Lacy*, 643 F.2d 284, 285 (5th Cir. 1981) (Rule 9(b) "set[s] the standards for a release pending appeal from a conviction and do[es] not encompass an appeal from an order revoking probation"). As Rule 9(b) applies to the order regarding release after a judgment of conviction if the party has filed a notice of appeal from the judgment of conviction and as the judgment of

14

conviction has long been final, Rule 9(b) by its terms does not apply to Mr. Meader's appeal of the denial of his motion for compassionate release.

The Court concludes that it is unable to grant Mr. Meader the relief that he seeks under the Rule and statute that he invokes in his motion. Still, the Government suggests that the Court may consider Mr. Meader's motion under 18 U.S.C. § 3143(b).[3] Under that framework, the Court assesses whether Mr. Meader has demonstrated (1) "by clear and convincing evidence that [he] is not likely to flee or pose a danger to any other person or the community;" and (2) "that the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in . . . reversal [or] an order for a new trial . . . ." 18 U.S.C. § 3143(b)(1).

### B.  Applying 18 U.S.C. § 3143(b)(1) to Kenneth Meader's Motion

#### 1.  Whether Mr. Meader Has Shown by Clear and Convincing Evidence That He Is Not a Danger to the Community

As in his underlying motion for compassionate release, Mr. Meader stresses that his age, ailing health, the support of his family members and fiancé, and his engagement in BOP programming "mitigate him being a danger to any person or the community." *Def.'s Mot.* at 2; *see Def.'s Reply* at 5. Judge Hornby and this Judge considered at length the nature of Mr. Meader's crimes, with an emphasis on the need to protect the public, and could not conclude that he no longer poses a danger to the community and therefore could not grant compassionate release. *See Order* at 17-18 (ECF No. 161); *Order* at 4-5 (ECF No. 121).

---

[3]    The Court is not certain that § 3143(b)(1) provides the authority for release in this situation, but as the Government has suggested that it does, the Court has engaged in this § 3143(b) analysis to make certain that it has responded to all possible arguments for release pending appeal.

As the Government points out, in Mr. Meader's motion for reconsideration of his second motion for compassionate release, he argued that Judge Hornby failed to give due weight to the letter "from the father of the alleged victim" of his state statutory rape conviction, which "would never have been provided to the Court if there was any truth in those charges." *Emergency Mot. for Reconsideration of Compassionate Release* at 3 (ECF No. 139).

In its March 22, 2022, order, the Court declined to consider a letter from Gary Seamon, the father of the victim of Mr. Meader's 1988 convictions for rape and unlawful sexual contact with a thirteen-year-old girl, in which Mr. Seamon characterized his daughter as a liar and informed the Court that the 1988 crimes never occurred. *Order* at 18, n.5 (citing *Letter from Gary Seamon* at 1-2 (ECF No. 137)). Mr. Seamon also alleged that the victim of this federal crime was a liar and "lied about things that happened with Ken [Meader] as well." *Letter from Gary Seamon* at 2. The reason the Court declined to consider Mr. Seamon's January 28, 2021, letter is that the Court was not certain that Mr. Meader had authorized or adopted its contents. *Order* at 18, n.5.

However, as regards the 1988 convictions, the Court erred. This is because on March 8, 2021, Mr. Meader filed an emergency motion for reconsideration of Judge Hornby's denial of his motion for compassionate release, *Emerg. Mot. for Recons. of Mot. for Compassionate Release* (ECF No. 139), in which he expressly adopted Mr. Seamon's claim that he was innocent of the 1988 crimes:

> The conduct for that conviction never occurred and a letter was provided to the court which proved this . . . This extraordinary letter would not

16

> have been provided to the court if there was any truth to those charges especially from the victim's father, and proper determination by a non-biased judge would have given this letter appropriate weight and is another justification to have reconsideration of the denial because it is fundamentally unfair.

*Id.* at 3. Thus, Mr. Meader did in fact adopt Mr. Seamon's allegation that the victim of his 1988 crimes was a liar and that he was actually innocent of the state crimes of rape and unlawful sexual contact. Although Mr. Meader did not adopt Mr. Seamon's scurrilous allegations against the victim of his federal crimes, the Court has taken into consideration his recent disparagement of and blaming of the thirteen-year-old victim of his 1988 state court convictions, and this provides another basis to deny his motion for compassionate release and his current demand for release pending appeal.

The Court concludes that, considering the dangerous nature of his federal crimes and denial of responsibility for prior convictions for sexual violence, Mr. Meader has not demonstrated by clear and convincing evidence that he would not pose a danger to the community if released.

### 2.  Whether Mr. Meader Has Raised a Substantial Question of Law on Appeal

The First Circuit has explained that a "substantial question" warranting release pending appeal under § 3143(b)(1)(B) is "close," *United States v. Colon-Munoz*, 292 F.3d 18, 20 (1st Cir. 2002), and would not be harmless error if "decided the other way." *United States v. Bayko*, 774 F.2d 516, 523 (1st Cir. 1985). Here, the Court's discretionary assessment, following a detailed review of Mr. Meader's case, is that early release "would both fail to account for the seriousness of the offenses of

conviction and undercut the policy of promoting deterrence" and does not present such a close question. *Saccoccia*, 10 F.4th at 9.

Finally, as explained above, Mr. Meader appealed the outcome of his request for compassionate release. For the Court to grant his release pending appeal under this prong, it would have to find that his underlying convictions would likely be reversed, which is not at issue in a compassionate release situation.

## V. CONCLUSION

The Court DENIES Kenneth Meader's Motion for Release Pending Appeal (ECF No. 166).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 21st day of September, 2022